UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM BROOKS,

   Petitioner,

v.              20-CV-0516 (JLS)

JULIE WOLCOTT, Superintendent of
Orleans Correctional Facility, et al.,

   Respondents.

---

## DECISION AND ORDER

*Pro se* Petitioner William Brooks, an inmate at Orleans Correctional Facility, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release based on the conditions of his confinement during the COVID-19 pandemic. *See* Dkt. 1. Respondents moved to convert Brooks's petition to one brought pursuant to 28 U.S.C. § 2254 (Dkt. 5), which the Court granted. Dkt. 10. Now before the Court is Respondents' motion to dismiss for failure to state a claim and for failure to exhaust (Dkt. 11), as well as Brooks's motions for expedited and other relief. Dkts. 13, 14, 16. For the following reasons, the Court grants Respondents' motion to dismiss and denies Brooks's motions.

## FACTS

Brooks currently is in state custody at Orleans Correctional Facility ("Orleans"). *See generally* Dkt. 1, at 1, ¶ 1. He is serving a 22-years-to-life sentence

for second-degree murder and attempted robbery in the first degree. *See* Dkt. 1, at 2 ¶ 5; *see also* Dkts. 5-2, 5-3 (documenting Brooks's conviction and sentence). Brooks alleges he is classified as a medium-security inmate because of good behavior and is about thirty months away from a parole board hearing. *See* Dkt. 1, at 2-3 ¶¶ 6, 8.

Brooks alleges that the correctional facility setting and operations of Orleans make it impossible for Respondents to follow health authorities' recommendations and prevent the rapid spread of a highly contagious disease like COVID-19. Dkt. 7-1, at 6-8 ¶¶ 22-35. Brooks describes his setting as a "dorm one with over 50 inmates in unclosed area and space" with only "one inch and half partitions separating" him from the other inmates. Dkt. 1, at 3 ¶ 9; Dkt. 7-1, at 6 ¶ 26. Brooks relates that he must use the same bathroom, toilets, showers, phones, and other items as forty-nine other individuals. Dkt. 7-1, at 7 ¶ 27. According to Brooks, if an outbreak happens within Orleans, "the staff is not equipped to respond," and the "current state of prison condition[s] does not allow social distancing." Dkt. 1, at 4 ¶ 15. Brooks alleges that more than eleven employees have been "within the walls of the facility with COVID-19." Dkt. 1, at 4 ¶ 13. He describes how staff only wear the provided masks in his dorm when "staff of a higher ranking" visit, and every staff member except for two have "consistently shunned the responsibility to wear the mask provided." Dkt. 2, at 4 ¶¶ 5-6.

Brooks is concerned for his health because he suffers from "recently physician diagnosed medical conditions [including] hypertension, tachycardia and high-blood

pressure." Dkt. 1, at 3 ¶ 8; Dkt. 7-1, at 3-4 ¶ 13. Brooks claims his medications for these medical conditions weaken his immune system and cause side effects such as shortness of breath, acute dizziness, irregular or slowing of the heartbeat, and vertigo. Dkt. 1, at 3 ¶ 10; Dkt. 7-1, at 4 ¶¶ 14-15. Brooks states that he has suffered "several episodes" due to these medical conditions and side effects, resulting in "being taken to the outside hospital" five times since November 2019 "because the facility's medical staff is inadequate to protect his health." Dkt. 1, at 3 ¶ 11; Dkt. 2, at 5 ¶ 9. Based on these circumstances, Brooks alleges he is in imminent danger and there is a "grave risk" of his death if he were to "contract COVID-19 while in the care and custody of Respondents." Dkt 7-1, at 9 ¶ 39; Dkt. 2, at 3-4 ¶ 2.

Brooks cites numerous health authorities and emergency declarations, both state and national, to support his claim that his "prison conditions became unconstitutional" in light of COVID-19. Dkt. 1, at 2 ¶ 7, at 4 ¶ 16; Dkt. 7-1, at 4-8 ¶¶ 16-35. Brooks claims that the state courts effectively have been closed since March 17, 2020, and that various executive orders have suspended and modified normal operations of rules, laws, and regulations. Dkt. 1, at 4 ¶ 14; Dkt. 7-1, at 4-5 ¶¶ 18-19. As a result, Brooks seeks a writ of habeas corpus ordering Respondents to discharge him from custody, and that the U.S. Marshal remove him from Orleans if Respondents do not comply. Dkt. 1, at 5.

3

## **PROCEDURAL HISTORY**

The Court set forth the earlier procedural history of this case in its decision and order granting Respondents' motion to convert the petition (Dkt. 10) and does not repeat that history here.

On May 26, 2020, Respondents moved to dismiss on two grounds: (1) a conditions of confinement claim does not support habeas relief; and (2) Brooks failed to exhaust available state court remedies. Dkt. 11. On or about that same date, Brooks submitted a "Traverse to Answer," in which he argues that, under "these special circumstances…exhaustion must be deem[ed] futile and excused." Dkt. 12, at 3. In a contemporaneous motion, Brooks states that he falls "under the exception of the administrative exhaustion requirement under 28 U.S.C. § 2254(b)(1) and 42 U.S.C. § 1997e et. seq."[1] Dkt. 14, at 3 ¶ 7. Brooks's additional motions seek to add defendants and to assert new facts related to a retaliation claim under the First

---

[1] In his Traverse, Brooks discusses and cites to case law concerning the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. Dkt. 12, at 3-6; 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). He also cites to the PLRA's exhaustion requirement in his motion of May 26, 2020. Dkt. 14, at 3 ¶ 7. However, the PLRA's exhaustion requirement does not apply here because Brooks filed a habeas corpus petition, not a Section 1983 action. *See United States v. McGriff*, 468 F. Supp. 2d 445, 447 (E.D.N.Y. 2007) ("A *habeas* petition is not subject to the administrative exhaustion requirement of the [PLRA]."). If Brooks were to file a Section 1983 claim, *see infra* Section II, the PLRA's requirements, including the exhaustion requirement, would apply. But, as discussed in Section I.A., a separate exhaustion requirement applies to Section 2254 habeas petitions. The Court liberally construes Brooks's arguments in that context.

Amendment. Dkts. 13, 14. On June 1, 2020, Brooks submitted a motion to withdraw the Traverse to Answer[2] as well as a Memorandum of Law regarding his motion for an expedited hearing, both of which were docketed on June 8, 2020. Dkts. 15, 16.

## DISCUSSION

Because Brooks is a *pro se* petitioner, the Court will "construe [his] pleadings liberally and interpret them 'to raise the strongest arguments they suggest.'" *See Wells v. Annucci*, No. 19-cv-3841, 2019 WL 2209226, at *1 (S.D.N.Y. May 21, 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). His *pro se* status, however, "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *See Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 238 (S.D.N.Y. 2008) (internal quotations and citations omitted).

### I. Respondents' Motion to Dismiss

Brooks raises an Eighth Amendment claim based on his feared exposure, as an allegedly high-risk inmate, to COVID-19 while in Respondents' custody. Respondents move to dismiss the petition because it does not state a cognizable claim and because Brooks did not exhaust available state remedies. Because

---

[2] The Court acknowledges that Brooks wishes to withdraw his Traverse to Answer. Dkt. 15. However, this Court has reviewed and considered all of Brooks's filings in this decision, to the extent they relate to the exhaustion requirement at issue.

Brooks failed to exhaust his claims, the Court will not address the other arguments raised by the State or resolve the petition on the merits.

### A. Exhaustion Requirement under 28 U.S.C. § 2254

Respondents argue that the petition must be dismissed because Brooks did not exhaust his claims. In the petition and other filings, Brooks does not allege that he sought relief for his claims in administrative proceedings or in state court. Instead, he argues that the "state courts have effective March 17, 2020 closed its doors to its residents," and that he has "no other form of recourse that would be other than futile and would be inconsistent with this National Emergency." Dkt. 1, at 4 ¶ 14. Brooks also argues that exhaustion must be deemed "futile and excused" in light of the emergency and special circumstances of the COVID-19 pandemic. Dkt. 12, at 3. Respondents argue that Brooks did not allege he raised any claim in state court and is not excused from failing to exhaust state remedies. Dkt. 11-5, at 3-4.

As this Court previously explained, under 28 U.S.C. § 2254(a), a sentenced state prisoner who alleges he is in state custody in violation of federal law may seek relief in federal court pursuant to an application for a writ of habeas corpus. *See* Dkt. 10, at 5-8. Section 2254 requires a petitioner to show that he has "exhausted the remedies available in the courts of the State" before a federal court will consider the writ. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a

petitioner must "fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner exhausts his or her claims when he or she "presented [his or her] constitutional claim to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

There are several ways a petitioner may exhaust his or her claims. As relevant here, where the claim for relief is not based on a trial court record, a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, such as a motion under New York Criminal Procedure Law § 440. *See Elleby v. Smith*, No. 20-cv-2935, 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020). Or a petitioner may petition the trial court or appropriate Appellate Division for a writ of habeas corpus and seek review of any decision denying the petition. *Id.*[3] A petitioner who challenges the execution, rather than validity, of his or her sentence under Section 2254, "is still required to exhaust all of his state court remedies before filing a habeas petition in state court, and . . . bears the burden of

---

[3] Where petitioner's claim is based on the trial court record, which is not the case here, a petitioner may exhaust by filing a direct appeal to the relevant Appellate Division and seeking leave to appeal to the New York Court of Appeals. *See Elleby*, 2020 WL 2611921, at *3.

7

establishing that [he or she] has met this requirement." *Rapeika v. Adm'r N. State Prison*, No. 20-cv-5358, 2020 WL 2092790, at *1. (D.N.J. May 1, 2020).

Section 2254 provides two narrow exceptions to the exhaustion requirement in 28 U.S.C. § 2254(b)(1)(A). A federal court may grant a petitioner's unexhausted petition for habeas corpus if (1) "there is an absence of State corrective process," or (2) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, exhaustion is not required when "there is no further state proceeding for petitioner to pursue" or where such pursuit "would be futile." *See Elleby*, 2020 WL 2611921, at *4 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

## B. Brooks's Petition Must Dismissed for Failure to Exhaust

Brooks does not provide any evidence that he attempted to exhaust the claims in his petition in state court—in fact, he asserts that he has not done so because the courts are "closed." Dkt. 1, at 4 ¶ 14. Respondents did not locate any filings or evidence that Brooks presented his claims to, or sought release in, a state court. Dkt. 11-5, at 4. Brooks has not met his burden of establishing that he exhausted his claims.

Nor does an exception to exhaustion apply here. Despite Brooks's arguments to the contrary, state court collateral review proceedings remain available to him. *See Elleby*, 2020 WL 2611921, at *4. Brooks cites various state and national executive orders to argue that the state courts are closed to him and that he is not required to follow the ordinary procedures, regulations, etc. in pursuing his claims.

*See, e.g.*, Dkt. 7-1, at 4-5 ¶¶ 16-20. But courts across New York State have considered, and resolved, claims and petitions seeking release from state custody in connection with the COVID-19 pandemic. *See, e.g.*, *People ex rel. Squirrell v. Langley*, No. 500451/2020, 2020 WL 2736623 (Sup. Ct. Putnam Cty. May 25, 2020) (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic where the court, after thoroughly examining the measures taken by the sheriff and other officials, concluded there was no violation of petitioners' due process or Eighth Amendment rights); *People ex rel. Gregor v. Reynolds*, No. CV20-0150, 2020 WL 1910116 (Sup. Ct. Essex Cty. Apr. 17, 2020) (concluding, where two inmates filed article 70 petitions for release, the sheriff's failure to take adequate protective measures violated the due process rights of one inmate who was vulnerable to COVID-19); *People ex rel. Stoughton v. Brann*, No. 451078/2020, 2020 WL 1679209 (Sup. Ct. New York Cty. Apr. 6, 2020) (ordering the release of eighteen "at-risk" prisoners in a due process challenge by thirty-two petitioners detained at the Rikers Island prison).

Brooks's claim that state courts are unavailable to him, "without further factual or legal allegations to support his claim," is "inadequate to show that there [is or was] no available process in state courts." *Rapeika*, 2020 WL 2092790, at *2. While exhaustion requirements may be waived when "relief is truly unavailable," Brooks has not established that state courts are unavailable to him now, or were unavailable when he filed this petition. *See Money v. Pritzker*, No. 20-cv-2093, No. 20-cv-2094, 2020 WL 1820660, at *21-22 (N.D. Ill. Apr. 10, 2020). Indeed, as

9

Defendants note, pursuant to the state court Administrative Order dated March 22, 2020, state courts remained open to "process essential proceedings, including 'emergency applications related to the coronavirus.'" Dkt. 11-5, at 4; *see also* Dkt. 11-4, Exh. 3. For the same reasons, Brooks did not demonstrate that pursuing his request for release in state court would have been futile. *See Elleby*, 2020 WL 2611921, at *4.

Other federal courts have reached similar conclusions when faced with habeas petitions seeking release from state custody based upon COVID-19. *See Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (collecting cases); *Elleby*, 2020 WL 2611921, at *5.

Dismissing Brooks's petition to allow him to exhaust his claims in state court affords "the state court[] . . . the first opportunity to review [his] claim[s] and provide any necessary relief." *See O'Sullivan*, 526 U.S. at 844; *see also Rose v. Lundy*, 455 U.S. 509, 515 ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."). Exhaustion also ensures that, if Brooks's petition returns to federal court, it will "be accompanied by a complete factual record to aid [the Court] in [its] review." *See Rose*, 455 U.S. at 519. A full factual record is particularly important here, in light of the "rapidly changing conditions in prison and the evolving steps that prisons are taking" to address COVID-19. *See Elleby*, 2020 WL 2611921, at *5.

Because Brooks did not exhaust his claims in state court or demonstrate that state courts are unavailable to him,[4] the Court dismisses his petition without prejudice.[5] Brooks may pursue his claims and request for release in state court and, assuming he exhausts those remedies, may file a new petition in this Court.

## II.   Brooks's Motions to Amend Petition and for Expedited Hearing

In motions dated May 26-27, 2020, Brooks requests leave to amend his petition to include new parties, as well as for an expedited hearing on his motion for a temporary restraining order. See Dkts. 13, 14. Brooks alleges that Sergeant J. Ferraioli and Correction Officer R. Iannozzelli retaliated against him "for filing this Federal Habeas Corpus" action and for "exercising [his] 1st Amendment guarantee for the right to petition to the government for the redress of grievances." Dkt. 13, at 1-2. According to Brooks, after he filed an inmate grievance complaint against

---

[4] The Court notes that Brooks would have had to exhaust his claims and request for relief in state court even if the Court had denied Respondents' motion to convert the petition and had analyzed Brooks's claims under 28 U.S.C. § 2241. See Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632-35 (2d Cir. 2001) (citing the "requirement of administrative exhaustion as spelled out in . . . decisional law" that applies to Section 2241 petitions, and declining to excuse petitioner's failure to exhaust); Razzoli v. Strada, No. 10-cv-4802, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) (explaining that "[b]efore seeking habeas relief under § 2241, . . . prisoners must exhaust any available administrative remedies, or else justify the failure to exhaust these remedies," and holding that petitioner was "not excused from his duty to exhaust administrative remedies").

[5] Section 2254 allows a district court to, "in its discretion, *deny* on the merits habeas petitions containing unexhausted claims." See Lewis, 328 F. Supp. 2d at 405. The Court declines to exercise that discretion here and leaves the merits of Brooks's Eighth Amendment and due process claims for the state court to decide in the first instance.

Ferraioli, Ferraioli and Iannozzelli made false misbehavior reports and harassed him. *See* Dkt. 14, at 4-7, ¶¶ 12-28; Dkt. 14, at 9-15 (attached complaints and reports). Brooks asks the Court to issue an expedited temporary restraining order "removing [him] from these unconstitutional restraints before [he is] subjected to further harm, or issue an order of protection to the respondents." Dkt. 14, at 7. Brooks reiterates this request in his additional filings, including his memorandum of law. Dkt. 15, at 7.

Brooks's requests are without merit. By way of background, the Court previously discussed the distinctions between a petition for a writ of habeas corpus (seeking release from illegal custody) and a Section 1983 claim (protesting prison conditions but not seeking release) at length in a prior decision. *See* Dkt. 10, at 9-11. A Section 1983 action is the "proper remedy" for a state prisoner making a constitutional challenging the constitutionality of the conditions of prison life, but not the fact or length of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). This Court previously concluded that Brooks's petition, to the extent it sought only immediate release from Respondents' custody, fell "squarely within th[e] traditional scope of habeas corpus." Dkt. 10, at 10 (citing *Preiser*, 411 U.S. at 487). To the extent Brooks still seeks the same relief—"immediate and/or speedier release from prison" and a TRO removing him from his "unconstitutional

constraints"[6]—his claims are properly analyzed as habeas corpus claims. *See* Dkt. 14, at 3 ¶ 6; Dkt. 14, at 7.

Thus, a Section 2254 proceeding is not the proper vehicle for a First Amendment claim like retaliation. *See Miller v. Williams*, No. 4:11-cv-65, 2012 WL 135670, at *1 (S.D. Ga. Jan. 17, 2012); *see also Castro v. Martel*, No. CIV S-08-2390-MCE-TJB, 2010 WL 4880630, at *12 (E.D. Cal. Nov. 23, 2010) ("Generally, a prisoner's complaint that prison officials are violating the prisoner's First Amendment rights must be raised in a civil rights action under § 1983, and not in a § 2254 habeas petition…Likewise, discriminatory retaliation claims must be raised in a civil rights action under § 1983, and not in a § 2254 habeas petition."). The Second Circuit specifically held that retaliation against a prisoner for pursuing a grievance violates the prisoner's First and Fourteenth Amendment rights and, therefore, is actionable under 42 U.S.C. § 1983. *See Varel v. Demmon*, 491 F. Supp. 2d 442, 450 (S.D.N.Y. 2007) (quoting *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)).

---

[6] Alternatively, Brooks asks the Court to "issue an order of protection to the respondents." Dkt. 14, at 7; Dkt. 15, at 7. This Court interprets this "prayer for relief" as a continued request for release from custody, consistent with his other filings. Even if the Court interpreted this request to mean injunctive relief short of release—like ordering Respondents to stop retaliating against or harassing Brooks—it is still not actionable under Section 2254, for the reasons discussed in this order. If he wishes, Brooks may request relief related to any retaliation claim in a future civil action. But such retaliation claims are not a basis for release from custody.

In essence, Brooks asks this Court to "evaluate the potential success of a retaliation claim," which is unrelated to the propriety of his custody. *See Miller*, 2012 WL 135670, at *1 (citation omitted). Thus, to the extent Brooks's motions seek relief for alleged retaliation in violation of the First Amendment, they are not cognizable under Section 2254. If he wishes to pursue these claims, Brooks must seek relief in a separate suit under Section 1983.

For these reasons, the Court denies Brooks's motions (Dkts. 13, 14). The claims relating to retaliation are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, the Court: GRANTS Respondents' motion to dismiss the petition (Dkt.11); DENIES Brooks's motion to amend and for expedited hearing (Dkts. 13, 14); and DENIES Brooks's motion to withdraw the Traverse (Dkt. 16) as moot. The Clerk of Court is directed to close this case.

In addition, because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that Brooks has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and, accordingly, DENIES a certificate of appealability.

The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore DENIES leave to

appeal as a poor person. *See Coppedge v. United States*, 369 U.S. 438, 444-46 (1962).

Brooks must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   June 11, 2020
         Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE